IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FAR WEST BANK,<br><br>                Plaintiff,<br>v.<br><br>WALTER G. SONNTAG, and BLAKE J. YERMAN,<br>                Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR A CONTINUANCE<br><br>Case No. 2:11-cv-410<br><br>Magistrate Judge Brooke Wells |

Before the court is Plaintiff Far West Bank's Motion for Summary Judgment[1] and Defendants Walter Sonntag's and Blake Yerman's Motion to Continue Plaintiff's Motion for Summary Judgment Pending Discovery.[2] On December 12, 2011, the court heard oral argument on both motions. Plaintiff was represented by Nathan Dorius and Defendants were represented by Steven Crawley. Having heard oral argument and after considering the parties' memoranda, affidavits and relevant case law the court renders the following decision. As outlined below the court grants Plaintiff's motion and denies Defendants' motion.

### I. BACKGROUND[3]

In March of 2008, Defendant Blake Yerman executed and delivered to Plaintiff Far West Bank (FWB) a Promissory Note in the amount of $780,000 together with interest on the unpaid principal balance until it was paid in full. The Note matured on March 24, 2010. To secure the amounts borrowed under the note, Yerman along with Defendant Walter Sonntag, executed and

---

[1] Docket no. 14.

[2] Docket no. 35.

[3] The court finds the following facts to be undisputed.

delivered to FWB a Revolving Credit Deed of Trust granting and conveying to FWB a security interest in and lien against property located in Salt Lake County. Yerman defaulted on the Note by failing to pay it off by its maturity date of March 24, 2010.

In August 2010, FWB initiated non-judicial foreclosure proceedings on the Trust Deed by causing a notice of default to be recorded against the property. On December 30, 2010, a trustee's sale was conducted and FWB was the successful bidder purchasing the property for $550,000, which was $230,000 less than the original principal amount owed under the Note.

Defendants Yerman and Sonntag filed a lawsuit in state court and obtained a Temporary Restraining Order enjoining the trustee from recording the sale. FWB filed a counterclaim in that suit seeking a deficiency judgment. On February 17, 2011, the parties entered into a Settlement Agreement. Pursuant to the Settlement Agreement, Defendants were required to (1) pay the amount of $40,000.00 to FWB (the Settlement Amount) within thirty (30) days from the effective date of the Settlement Agreement; (2) immediately terminate the TRO; and (3) file with the Court a dismissal with prejudice of the state lawsuit no later than seven (7) business days after the payment of the Settlement Amount by Defendants to FWB.[4] The Settlement Agreement explicitly provides that the

> occurrence of any one or more of the following events or occurrences shall constitute and [sic] *'Event of Default'* under this Agreement:
> (a) The failure of the Debtors to deliver the Payment to FWB in good funds within thirty (30) calendar days from the Effective Date.
> (b) The failure of the Debtors or their legal counsel to execute and deliver to FWB, concurrently with the execution of this Agreement, the Stipulation.

---

[4] *See* Settlement Agreement p 3-4, attached as exhibit A to the Complaint. The court notes that in the Settlement Agreement the parties agreed that Utah law would apply to any disputes arising from the agreement.

(c) The failure of the Debtors or their legal counsel to file the Dismissal with the court within seven (7) business days following delivery of the Payment to FWB.[5]

On February 17, 2011, Yerman sent an e-mail to Defendants' previous counsel, Abraham Bates,[6] informing him that the Settlement Agreement had been signed by both him and Sonntag. Yerman also stated: "It looks like a key part in this will be for you to file a dismissal within 7 days of our full Payment to FWB."[7]

On March 15, 2011, Yerman sent an e-mail that contained a copy of the cashier's check evidencing payment in full of the $40,000 Settlement Amount to Brian Comer of FWB, FWB's counsel Nathan Dorius, Codefendant Sonntag, and Defendants' former counsel Abraham Bates. In the same e-mail Yerman stated that "I understand that Abe needs to file a dismissal with the court within the next few days? I am glad that this is over with FWB."[8]

Defendants failed to file a dismissal of the state lawsuit within seven business days of paying the Settlement Amount. On April 15, 2011, Plaintiff's counsel sent Defendants' counsel via certified mail a letter referencing Defendants' default under the terms of the Settlement Agreement. The instant action for breach of contract was filed with this court on May 4, 2011. Defendants dismissed their state court action on May 12, 2011.

## II. DISCUSSION

FWB moves for summary judgment and seeks judgment entered against all Defendants "jointly and severally, in the principal amount of $230,000.00, plus accrued unpaid interest, late

---

[5] *Id.* at p 4-5.

[6] On September 9, 2011, the Court granted Plaintiff's motion to disqualify Mr. Bates. *See* docket no. 54.

[7] February 17, 2011, e-mail from Blake Yerman to Abraham Bates and Wally Sonntag, attached as exhibit B to Plaintiff's Motion for Summary Judgment.

[8] March 15, 2011, e-mail from Blake Yerman to Brian Comer, Abraham Bates, Nathan Dorius and Wally Sonntag, attached as exhibit C to Plaintiff's Motion for Summary Judgment.

fees and costs totaling approximately $28,000.00 through January 18, 2011, accruing interest, before and after judgment, from January 19, 2011 until paid in full, at the default rate of 21 % per annum, and all of FWB's costs and attorney's fees which shall be established to the Court by affidavit."[9] FWB also requests that any judgment be augmented by post-judgment interest at the Note default rate of 21% per annum until the judgment is paid in full and the payment of any additional reasonable attorney's fees expended in collecting the judgment.[10]

In contrast, Defendants move this court for a continuance of Plaintiff's summary judgment motion. Defendants seek discovery regarding liquidated damages and discovery concerning what a reasonable time for performance is under the contract. At oral argument, Defendants asserted that they were primarily interested in discovery regarding whether the damages provision in the agreement, i.e. the Compromised Debt,[11] is valid under *Woodhaven Apartments v. Washington*.[12]

## A. LEGAL STANDARD

### (i) Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] The court must "examine the factual record

---

[9] Mem. in sup. p. 14.

[10] *See id.*

[11] The Settlement Agreement defines the Compromised Debt as "the principal amount of $230,000, plus accrued unpaid interest, late fees and costs totaling approximately $28,000.00 through January 18, 2011, accruing interest, before and after judgment, from January 19,2011 until paid in full, at the default rate of21.00% per annum, and costs and attorney's fees." *Settlement Agreement* p. 2 ¶ H.

[12] 942 P.2d 918 (Utah 1997).

[13] Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Alder v. Wal-Mart Sotres, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[14] "The mere existence of a scintilla of evidence in support of [a party's] position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [respective party]."[15]

The moving party, which is FWB, "has the initial burden of demonstrating the absence of any genuine issue of material fact to support the non-moving party's case." Once the moving party has met this burden, the burden then shifts back to the nonmoving party to show that there is a genuine issue of material fact. To discharge its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" If the non-moving party fails to meet this burden with respect to any essential element of its case on which it bears the burden of proof at trial, then the moving party is entitled to summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." The court considers the "evidence in the light most favorable to the non-moving party, drawing all reasonable inferences from the available underlying facts."

**(ii) Rule 56(d) Continuance[16]**

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer

---

[14] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

[16] Defendants' motion is entitled a Motion for Continuance under Rule 56(f). In 2010 the Federal Rules were changed and Rule 56(d) carried forward without substantial changes the provisions formally found in subsection (f). The case law analyzing the language of Rule 56(f) is also applicable to 56(d) as nothing substantively has changed other than its subsection under Rule 56. The court refers to the Rule by its new name.

5

considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[17]

The Tenth Circuit has stated that "A party seeking to defer a ruling on summary judgment under Rule 56[(d)] must 'file an affidavit that explain[s] why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts.'"[18] Rule 56(d) requires a party seeking its protection to "state with specificity how the additional material will rebut the summary judgment motion."[19] Further, "A party may not invoke [Rule 56(d)] by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. Rather, the party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact."[20]

With the foregoing principles in mind the court now turns to the issues at hand.

## B. Analysis

Plaintiff asserts there are no material facts in dispute. According to Plaintiff, this is a simple breach of contract action that is similar to a breach of a promissory note, where the appropriate damages are the remaining payment amounts plus interest, costs, and attorney fees.

Next, Plaintiff argues there are no ambiguities in the Settlement Agreement. Therefore, "Under basic rules of contract interpretation, [this court should] look first to the writing alone to

---

[17] Fed R. Civ. P. 56(d) (2010).

[18] *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007) (quoting *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)).

[19] *Ezra v. American Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000).

[20] *Id.*

determine its meaning and the intent of the contracting parties."[21] Parol evidence is unnecessary and should not be allowed.

Finally, Plaintiff asserts that time was of the essence in the Settlement Agreement based upon the plain language found in the contract. In support Plaintiff cites to *Griffeth v. Zumbrennen*[22] where the Utah Supreme Court analyzed an earnest money agreement and found that time was of the essence in the contract. That court stated:

> The earnest money agreement specifically required performance (payment in cash) on or before June 6, 1975. That provision, in and of itself, connotes that time was of the essence, and when coupled with the actions of parties pertaining to the requests for and denials of any time extensions, the fair import thereof is that the parties did agree that time was of the essence.[23]

In addition, FWB notes that Defendants understood that time was of the essence as evidenced by two emails written by Defendant Yerman. As set forth above, on February 17, 2011, Yerman sent an e-mail to Defendants' previous counsel informing him that the Settlement Agreement had been signed by both him and Sonntag. Yerman stated: "It looks like a key part in this will be for you to file a dismissal within 7 days of our full Payment to FWB."[24] And, on March 15, 2011, Yerman sent an e-mail to the parties and counsel in this case that contained a copy of the cashier's check evidencing payment in full of the $40,000 Settlement Amount. In this same e-mail Yerman stated that "I understand that Abe needs to file a dismissal with the court within the next few days? I am glad that this is over with FWB."[25]

---

[21] *Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 975 (Utah 2009).

[22] 577 P.2d 129 (Utah 1978).

[23] *Id.* at 131.

[24] February 17, 2011, e-mail from Blake Yerman to Abraham Bates and Wally Sonntag, attached as exhibit B to Plaintiff's Motion for Summary Judgment.

[25] March 15, 2011, e-mail from Blake Yerman to Brian Comer, Abraham Bates, Nathan Dorius and Wally Sonntag, attached as exhibit C to Plaintiff's Motion for Summary Judgment.

In opposition Defendants raise two arguments. First, the Compromised Debt is in the nature of liquidated damages "as it bears no relationship to the actual damages that may have been suffered by Plaintiff as a result of the tardy filing of the dismissal of Defendant's suit."[26] Second, Defendants assert that time was not of the essence in the contract because it was not expressly stated therein. Accordingly, Defendants had a "reasonable time" for performance. These two arguments also form the basis for Defendants Rule 56(d) motion seeking a continuance for discovery. Defendants assert that discovery is needed concerning "the issues of damages that may have been incurred by Plaintiffs and the issue of what is a reasonable time for performance."[27] According to Defendants, both of these issues contain material facts that preclude summary judgment at this stage of the case.

**(i) Time was of the essence in the Settlement Agreement**

Before turning to Defendants first argument, the court rejects Defendants' argument that time was not of the essence in the agreement.[28] Defendants cite to *Downtown Athletic Club v. Horman*,[29] in support of their position, but the court finds a close reading of this case undermines their arguments. In concluding that time was not of the essence in the agreement at issue in *Downtown Athletic Club*, the court stated "The Construction & Lease Agreement did not contain an express "time is of the essence" provision. Therefore, DAC had a reasonable time under the circumstances in which to satisfy the conditions precedent [and] [n]either party questioned whether [two years] was a sufficient amount of time . . . to perform."[30]

---

[26] Op. p. 3.

[27] Def.s' Mtn for Continuance p. 2.

[28] During oral argument counsel for Defendants appeared to abandon this argument somewhat calling it a minor argument.

[29] 740 P.2d 275, 280 (Utah App. 1987).

[30] *Id.* at 280 fn. 3 (citation omitted).

In contrast to that case, here, the time for performance—dismissing the state lawsuit within seven business days following delivery of the settlement payment to FWB—was explicitly set forth in the Settlement Agreement. And, the failure to file a dismissal of the state suit within seven business days following payment was specifically listed as an event of default under the agreement.[31] These provisions, in and of themselves, connote that time was of the essence.[32] In addition, Defendant Yerman communicated the need to file a timely dismissal twice to his counsel who helped negotiate the terms of the agreement. Therefore based upon the plain language found in the agreement and the undisputed facts found in the record, the court finds that time was of the essence in the Settlement Agreement.

Because the time for performance was explicitly set forth in the agreement, there is no need to engage in any discovery concerning what would be a reasonable time for performance under the terms of the agreement. Therefore the court rejects Defendants' argument that the need for such discovery forms a basis for a Rule 59(d) continuance.

**(ii) The Compromised Debt is valid and enforceable**

Next, the court turns to Defendants' first argument—that the Compromised Debt is in the nature of liquidated damages. In support of this argument Defendants cite to *Woodhaven Apartments v. Washington*.[33] In *Woodhaven* a landlord sought an award of liquidated damages after a tenant vacated an apartment six months before the lease ended. The district court and the court of appeals ruled in favor of the landlord. On appeal to the Utah Supreme Court, the tenant argued that the liquidated damages clause was unenforceable and unconscionable under the Utah

---

[31] *See* Settlement Agreement p. 4-5.

[32] *See Griffeth*, 577 P.2d at 131.

[33] 942 P.2d 918 (Utah 1997).

Consumer Sales Practices Act.[34] The court analyzed the enforceability of liquidated damage provisions in contracts noting that Utah has adopted Section 339 of the Restatement of Contracts. The court stated that

> "Under the basic principles of freedom of contract, a stipulation to liquidated damages for breach of contract is generally enforceable. Where, however, the amount of liquidated damages bears no reasonable relationship to the actual damage or is so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated that it shocks the conscience, the stipulation will not be enforced."[35]

The *Woodhaven* court then set forth a two part test for determining the validity of a liquidated damages provision. A liquidated damages clause is not enforceable as a contract unless "(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."[36] In applying this test the court concluded that there was insufficient evidence supporting the lower court's decision that the liquidated damages amount was a reasonable forecast of the harm caused by breach. The court, therefore, reversed and remanded for a recalculation of damages.[37]

Defendants assert that discovery is necessary into whether the Compromised Debt, i.e. the damages provided for in the Settlement agreement, is a reasonable forecast of just compensation for their breach. The court disagrees.

The court notes that Defendants do not contest the fact that they breached, nor do they contest the plain language of the Settlement Agreement. Therefore, according to the long established rules of contract interpretation the court looks to the writing within the four corners

---

[34] *See* U.C.A. 1953 § 13-11-3(2).

[35] *Woodhaven*, 942 P.2d 918, 921 (quoting *Allen v. Kingdon*, 723 P.2d 394, 397 (Utah 1986)).

[36] *Id.* (quoting *Reliance Ins. Co. v. Utah Dept. of Transp.*, 858 P.2d 1363, 1366 (Utah 1993)).

[37] The *Woodhaven* court did affirm the applicability of the Utah Consumer Sales Practices Act and concluded that the termination fee was not unconscionable.

of the contract.[38] The Settlement Agreement provides that any one of the following is a breach of the agreement and constitutes an event of default:

> (a)   The failure of the Debtors to deliver the Payment to FWB in good funds within thirty (30) calendar days from the Effective Date.
>
> (b) The failure of the Debtors or their legal cOU11Sei to execute and deliver to FWB, concurrently with the execution of this Agreement, the Stipulation.
>
> (c) The failure of the Debtors or their legal counsel to file the Dismissal with the court within seven (7) business days following delivery of the Payment to FWB.[39]

If an "event of default" occurs the following remedy is provided:

> Immediately upon the occurrence of any Event of Default, the obligations, agreements, and commitments of FWB under this Agreement shall immediately and automatically terminate and be of no further force or effect. In such event, and without further notice to or consent of the Debtors, Debtors hereby agree, jointly and severally, to pay the entire Compromised Debt to FWB within thirty (30) calendar days from the date of the first Event of Default to occur under this Agreement. The Debtors' failure to pay the Compromised Debt within thirty (30) calendar days shall constitute a breach of this Agreement, and FWB may file a breach of contract action against the Debtors, or any of them, to collect all amounts owing under this Agreement, including the Compromised Debt.[40]

Thus, according to the plain language of the agreement, if an event of default occurred the parties were essentially placed in an *a priori* position to the Settlement Agreement. Defendants would be obligated to pay the original amounts owing on the Note and Plaintiff would have remedies to collect that full amount.

During oral argument Defense counsel sought to persuade the court that this case involves two separate and distinct transactions or events. First, the circumstances surrounding the original state lawsuit, which included the failure to pay the Note, and the signing of the

---

[38] *See Giusti*, 201 P.3d at 975; *Daines v. Vincent*, 190 P.3d 1269, 1277 (Utah 2008); *Trans-Western Petroleum, Inc. v. U.S. Gypsum Co.*, 584 F.3d 988, 993 (10th Cir. 2009).

[39] Settlement Agreement at p 4-5.

[40] *Id.* at p. 5.

Settlement Agreement that ended the first transaction. And second, a separate and distinct breach of the Settlement Agreement. So, according to Defendants this court should not look back to the original Note as a basis for the damages suffered by Plaintiff. Rather, discovery needs to be done on the second event, the breach, to see what damages Plaintiff suffered and if the Compromised Debt was a reasonable forecast of those damages.

The court finds that the plain language of the agreement is clear and supports Plaintiff's position allowing for a recovery based on the Note. Despite Defendants' expressions to the contrary, the court finds that to adopt Defendants reading of the agreement would require the court to read the sentence "Debtors hereby agree, jointly and severally, to pay the entire Compromised Debt to FWB within thirty (30) calendar days from the date of the first Event of Default to occur under this Agreement"[41] entirely out of the agreement. Consequently, the court rejects Defendants interpretation of the agreement and finds it appropriate to consider the original Note and the default that occurred as a basis for the damages suffered by FWB.

The court finds that the Compromised Debt, as set forth in the Settlement Agreement, has a reasonable relationship to the actual damages suffered by FWB. The reasoning in *Woodhaven* supports this decision. The *Woodhaven* court stated that

> "Under the basic principles of freedom of contract, a stipulation to liquidated damages for breach of contract is generally enforceable. Where, however, the amount of liquidated damages bears no reasonable relationship to the actual damage or is so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated that it shocks the conscience, the stipulation will not be enforced.[42]

Here, the parties were free to negotiate a contract that resolved the underlying state action. Based upon the plain language of the contract it is questionable whether the

---

[41] *Id.*

[42] *Woodhaven*, 942 P.2d 918, 921 (quoting *Allen v. Kingdon*, 723 P.2d 394, 397 (Utah 1986)).

Compromised Debt should even be viewed as liquidated damages. But, even if the court construes them as such, they bear a reasonable relationship to the harm suffered by FWB from the default on the Note. These damages do not "shock the conscience" nor are they grossly excessive. In short, Plaintiff sought to avoid the uncertainty of extended litigation, which appeared necessary to collect on the entire Note amount and entered into an agreement with defendants. If however, Defendants failed to abide by the agreement, then Plaintiff would be entitled to collect on the original amount. Accordingly, the court finds that the damages agreed to by the parties should be enforced and there is no need to engage in any discovery regarding whether the damages are valid under *Woodhaven*.

## III. CONCLUSION

As set forth above, it is therefore

ORDERED that Plaintiff Far West Bank's Motion for Summary Judgment[43] is GRANTED.

It is further ORDERED that Defendants' Motion to Continue is DENIED.

The Clerk of Court is directed to enter judgment in favor of Plaintiff jointly and severally against all Defendants and in accordance with the terms found in the Settlement Agreement and in accordance with Plaintiff's motion. The case, however, is to remain open until such time as the amount of reasonable attorney's fees is established by Plaintiff pursuant to the terms of the agreement. Plaintiff's counsel is directed to file an affidavit within thirty (30) days from the date of this decision. Following which, Defendants may file any response within fourteen (14) days.

DATED this 15 December 2011.

Brooke C. Wells
United States Magistrate Judge

---

[43] Docket no. 14.